HARRIS, Appellee,

v.

FORD MOTOR COMPANY, Appellant.

[Cite as *Harris v. Ford Motor Co.*, 166 Ohio App.3d 599, 2006-Ohio-259.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 21302.

Decided Jan. 13, 2006.

Ronald L. Burdge and Elizabeth A. Wells, for appellee.

John J. Frost and Mary Arens Hale, for appellant.

WOLFF, Judge.

{¶ 1} In this appeal, Ford Motor Company claims that the Montgomery County Court of Common Pleas erred when it granted Timothy Harris's motion in limine, struck testimony offered at trial relating to Ford's Dispute Settlement Board ("DSB"), and granted Harris's motion to instruct the jury to disregard evidence concerning the DSB.

{¶ 2} On September 8, 2003, Harris bought a 2003 Ford Taurus from Interstate Ford in Miamisburg, Ohio. On March 31, 2004, Harris brought suit against Ford Motor Company for violations of Ohio's Lemon Law, the Magnuson–Moss Warranty Act, and the Ohio Consumer Sales Practices Act, and for breach of warranty. Harris alleged that his Ford Taurus often failed to start, shut off for no apparent reason while he was driving, and had "so many electrical problems that both the interior and exterior lights dim, flash, flicker and go out altogether without warning." Harris further alleged that there was a strong electrical burning smell from the vehicle and that it ran "mysteriously even after the key is removed."

{¶ 3} Ford filed an answer in which it denied the claims and asserted various affirmative defenses, including that Harris had failed to state a claim upon which relief may be granted. During discovery, Harris requested answers to interrogatories regarding Ford's defenses. In response to Harris's question as to how he had failed to state a claim upon which relief can be granted, Ford stated that he had "failed to pursue alternative dispute resolution through Ford's Dispute Settlement Board prior to filing suit in this case."

{¶ 4} On January 18, 2005, the parties submitted a joint pretrial statement. Ford listed its defenses to Harris's claims by stating that Ford "did not breach its express or implied warranties to Plaintiff, and therefore did not violate the Magnuson Moss Warranty Act or the CSPA, and that the vehicle does not meet the presumption of the Ohio Lemon Law." Ford made no mention of Harris's failure to pursue a settlement through Ford's DSB.

{¶ 5} The case proceeded to trial in January 2005, but a mistrial was declared due to Ford's representative having a conversation with two jurors. A second trial began on June 6, 2005. During Ford's cross-examination of Harris, Ford elicited testimony that the warranty manual that Harris had received when he purchased his vehicle indicated that a warranty dispute must be submitted to Ford's DSB before an action may be filed under the Magnuson–Moss Warranty Act or state law, and that the owner's manual also indicated that the process was free to owners of Ford vehicles. Harris filed a motion in limine to exclude further evidence regarding Ford's DSB mechanism, to strike Harris's testimony regarding the mechanism, and to instruct the jury to disregard Harris's testimony in that regard, raising four arguments. First, he asserted that Ford had failed to raise his failure to comply with the informal dispute-resolution requirement set forth in R.C. 1345.77(B) in its answer, and thus Ford had waived the defense. Second, Harris argued that Ford had failed to produce evidence upon which it relied for its assertion that participation in the DSB process was mandatory. Third, Harris contended that Ford presently lacks a qualified DSB and thus dismissal of this action for the purpose of first complying with R.C. 1345.77 would be a vain act. Finally, Harris asserted that Ford had failed to comply with the condition precedents to mandatory participation in the DSB process, namely, that Ford had failed to provide proper written notice of the informal dispute-resolution requirement.

{¶ 6} The court sustained Harris's motion on the ground that Ford had failed to raise the affirmative defense of failure to exhaust administrative remedies in a motion to dismiss, by answer, or by amendment under Civ.R. 15. The court reasoned that Ford's allegation that Harris had failed to state a claim upon which relief may be granted was insufficient to allege the failure to exhaust administrative remedies, "nor does it formulate in a simple, concise, and direct manner the issue to be resolved by the trial court." On June 7, 2004, the court instructed the jury to disregard all evidence regarding Ford's DSB and not to consider anything about the DSB when deciding the merits of the case.

{¶ 7} At the conclusion of the trial, the jury found in favor of Harris on his Ohio Lemon Law, Magnuson–Moss Warranty Act, and breach-of-warranty claims. The jury found that Ford had not committed any unfair or deceptive practices. The jury awarded damages in the amount of $3,000 on Harris's Magnuson–Moss

Warranty Act claim but awarded no damages for breach of warranty. Because Harris had elected to have Ford repurchase the vehicle under Ohio's Lemon Law, the court subsequently entered judgment in favor of Harris for $30,745.55 (Harris's damages under the Lemon Law) and required Harris to sign clear title to the vehicle to Ford upon payment of the judgment. The parties had previously stipulated that any damages awarded for breach of warranty and for violations of the Magnuson–Moss Warranty Act would merge with Harris's Lemon Law recovery.

{¶ 8} Ford raises one assignment of error on appeal.

{¶ 9} "The trial court erred when it sustained plaintiff's motion to strike testimony, motion to instruct jury, and motion in limine."

{¶ 10} In its sole assignment of error, Ford claims that the trial court improperly purged all evidence regarding Ford's DSB from the case. Ford asserts that the requirement that a vehicle owner resort to a qualified informal dispute-settlement program is an element of the claim and not an administrative remedy. Alternatively, Ford contends that Harris had received timely notice of the dispute resolution mechanism and could not bring a cause of action under R.C. 1345.75 prior to resorting to that dispute resolution process.

{¶ 11} R.C. 1345.75 establishes a cause of action against any manufacturer who fails to comply with R.C. 1345.72, which addresses the duty of the manufacturer, its agent, or its authorized dealer to conform new motor vehicles to any applicable express warranty by repairing or correcting any nonconformity. However, R.C. 1345.77(B) further provides:

{¶ 12} "If a qualified informal dispute resolution mechanism exists and the consumer receives timely notification, in writing, of the availability of the mechanism with a description of its operation and effect, the cause of action under section 1345.75 of the Revised Code may not be asserted by the consumer until after the consumer has initially resorted to the informal dispute resolution mechanism. If such a mechanism does not exist, if the consumer is dissatisfied with the decision produced by the mechanism, or if the manufacturer, its agent, or its authorized dealer fails to promptly fulfill the terms determined by the mechanism, the consumer may assert a cause of action under section 1345.75 of the Revised Code."

{¶ 13} R.C. 1345.77(A) authorizes the Ohio Attorney General to adopt rules for the establishment and qualification of an informal dispute-resolution ("IDR") mechanism to provide for the resolution of warranty disputes between the consumer and the manufacturer, its agent, or its authorized dealer. Those rules are set forth in Ohio Adm.Code 109:4–4–01 et seq. and 109:4–5–01 et seq.

{¶ 14} Ford claims that the requirement that a consumer resort to a qualified IDR mechanism is an element of the consumer's claim and that the failure to first resort to the IDR mechanism is not an affirmative defense subject to waiver if not properly asserted by motion or in an appropriate pleading. Ford argues that the trial court improperly treated the requirement as an "administrative remedy."

{¶ 15} Certainly, R.C. 1345.77 mandates that a consumer first employ an IDR mechanism if one has been qualified by the Ohio Attorney General and the consumer receives timely written notice thereof. Although we find some appeal to Ford's argument that compliance with the IDR requirement is a precondition to the accrual of a consumer's cause of action, we do not agree with Ford that exhaustion of that requirement is an element of a consumer's claim. Rather, the statutory requirement that a consumer first utilize a qualified IDR mechanism is a procedural matter, setting forth the steps that a consumer must take prior to seeking judicial relief. In other words, the IDR requirement set forth in R.C. 1345.77(B) is properly viewed as an administrative remedy that constitutes a prerequisite to filing a civil action under R.C. 1345.75. Cf. *Rose v. Saginaw Cty.* (2005), 232 F.R.D. 267 (statutory exhaustion requirement of Prisoner Litigation Reform Act must be raised as an affirmative defense or is waived). This conclusion is buttressed by the fact that resorting to a DSB is required only if one has been qualified by the Ohio Attorney General and if proper written notification thereof has been provided to the consumer.

{¶ 16} Exhaustion of administrative remedies is an affirmative defense that must be timely asserted or it is waived. *Driscoll v. Austintown Assoc.* (1975), 42 Ohio St.2d 263, 71 O.O.2d 247, 328 N.E.2d 395; *Jones v. Chagrin Falls* (1997), 77 Ohio St.3d 456, 674 N.E.2d 1388. As stated in *Jones*:

{¶ 17} "[U]nder our adversarial system of justice it is the responsibility of the party seeking to benefit from the doctrine [of exhaustion of administrative remedies] to raise and argue it. Once raised, it becomes the duty of the trial court to determine upon consideration of the affirmative defenses * * *, whether such action is proper. We do not perceive the obligation of arguing an affirmative defense to be unduly burdensome; it is consistent with the adversarial system of justice, and it protects the judiciary from the erosion of its authority represented by a holding that courts are without fundamental power to hear cases expressly placed within their purview by the General Assembly * * *." *Jones*, 77 Ohio St.3d at 462, 674 N.E.2d 1388.

{¶ 18} Because compliance with R.C. 1345.77(B) is a procedural matter and the failure to comply with that dispute-resolution mechanism requirement is an affirmative defense, Ford was required to properly raise Harris's failure to exhaust that administrative remedy. Conversely, Harris was not required to

plead in his complaint that he had pursued a resolution of his warranty dispute through Ford's DSB as part of his claim.

{¶ 19} Next, Ford asserts that even if exhaustion of the informal dispute resolution mechanism was an affirmative defense, it had adequately placed Harris on notice that it was asserting the defense when it alleged that Harris had failed to state a claim upon which relief may be granted. We disagree.

{¶ 20} Civ.R. 8(C) provides:

{¶ 21} "In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, want of consideration for a negotiable instrument, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense."

{¶ 22} Although the failure to exhaust administrative remedies is not expressly listed in Civ.R. 8(C) as an affirmative defense, it is well established that it is an affirmative defense. E.g., *Jones,* supra; *Morris v. Morris,* Clark App. No. 2003–CA–94, 2004-Ohio-6059, ¶ 42, 2004 WL 2588108, *5; *Shell v. Crain's Run Water & Sewer Dist.* (Jan. 21, 2000), Montgomery App. No. 17961, 2000 WL 43713. Thus, in order to assert the failure to exhaust administrative remedies as a defense, it must be clearly and expressly pleaded.

{¶ 23} Here, Ford failed to assert Harris's failure to exhaust administrative remedies in its answer. Although Ford answered Harris's interrogatory regarding his alleged failure to state a claim by indicating that he had "failed to pursue alternative dispute resolution through Ford's Dispute Settlement Board prior to filing suit in this case," we note that answers to interrogatories were not filed with the court. Moreover, in the joint final pretrial statement, Ford did not indicate that Harris's failure to pursue a settlement through Ford's DSB was one of its defenses. Accordingly, the trial court properly concluded that Ford had failed to properly raise Harris's failure to exhaust his administrative remedies, i.e., settlement through Ford's DSB, and that Ford had thus waived this affirmative defense.

{¶ 24} Citing *Covell v. Bur. of Motor Vehicles* (July 2, 1998), Montgomery App. No. 16895, 1998 WL 350547, Ford argues that we have permitted the failure to exhaust administrative remedies to be raised as an allegation of failure to state a claim upon which relief may be granted. While Ford is correct, the motion to dismiss in *Covell* expressly stated that Covell had failed to exhaust administrative remedies. Here, Ford's general averment in its answer that Harris had failed to state a claim upon which relief may be granted did not satisfy Civ.R. 8's

requirement that an affirmative defense be expressly stated.  Ford's argument lacks merit.

{¶ 25} The assignment of error is overruled.

{¶ 26} The judgment of the trial court is affirmed.

Judgment affirmed.

GRADY, P.J., and BROGAN, J., concur.