DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Defendants-Appellants Roger J. Kohler, II, Jana Kohler, and Roger Kohler (collectively "the Kohlers") have appealed from the judgment of the Wayne County Court of Common Pleas which granted summary judgment in favor of Plaintiffs-Appellees L.E. Sommer Kidron, Inc. ("Kidron") and L.E. Sommer Sons, Inc. ("Sommer"). This Court affirms in part and reverses in part.
 I {¶ 2} The Kohlers operate a dairy farm located just outside Orville, Ohio. While running the farm, the Kohlers purchased feed from Sommer. During their business relationship with the feed company, Sommer sold a portion of its *Page 2 
business to its employees and that location became Kidron. After the change in name and ownership, the Kohlers continued their relationship with Kidron.
 {¶ 3} On February 6, 2003, Kidron filed suit against the Kohlers seeking to collect on an overdue account. The Kohlers answered the complaint, asserting the affirmative defenses of setoff and recoupment. The Kohlers asserted that they did not owe the amount claimed by Kidron because Kidron and/or its predecessor Sommer had sold them contaminated feed which killed their cattle. In addition, the Kohlers counterclaimed on this basis, asserting numerous causes of action.
 {¶ 4} Upon completion of discovery, Kidron moved for summary judgment on its complaint and both Kidron and Sommer moved for summary judgment on the Kohlers' counterclaims. The Kohlers responded in opposition to both these motions. In addition, less than one week prior to trial, the trial court held a hearing on numerous pending motions. During that hearing, the trial court permitted Kidron and Sommer to amend their answers to include the statute of limitations defense. In addition, the trial court permitted Sommer to belatedly respond to previously unanswered requests for admissions.
 {¶ 5} On June 1, 2005, the trial court granted summary judgment in favor of Kidron on the complaint and in favor of Kidron and Sommer on the Kohlers' counterclaims. At that time, other claims remained outstanding so the trial court's order was not final and appealable. On June 28, 2006, the trial court created a *Page 3 
final, appealable order through the use of Civ.R. 54(B). The Kohlers have timely appealed from that order, raising five assignments of error for review.
 II {¶ 6} The Kohlers' first and second assignments of error challenge the trial court's grant of summary judgment. Accordingly, we first detail our standard of review as it relates to those assigned errors.
 {¶ 7} An appellate court reviews an award of summary judgment de novo.Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. This Court applies the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Viock v. Stowe-WoodwardCo. (1983), 13 Ohio App.3d 7, 12. Pursuant to Civ.R. 56(C), summary judgment is proper if:
 "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
 {¶ 8} The party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying portions of the record that demonstrate an absence of a genuine issue of material fact as to some essential element of the non-moving party's claim. Dresher v. Burt (1996), *Page 4 75 Ohio St.3d 280, 292. To support the motion, such evidence must be present in the record and of the type listed in Civ.R. 56(C). Id.
 {¶ 9} Once the moving party's burden has been satisfied, the non-moving party must meet its burden as set forth in Civ.R. 56(E). Id. at 293. The non-moving party may not rest upon the mere allegations and denials in the pleadings, but instead must point to or submit some evidentiary material to demonstrate a genuine dispute over the material facts. Id. See, also, Henkle v. Henkle (1991), 75 Ohio App.3d 732, 735.
 {¶ 10} Pursuant to Civ.R. 56(C):
 "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."
Based upon this standard of review, we review the Kohlers' first and second assignments of error.
 Assignment of Error Number One "THE TRIAL COURT ERRED BY GRANTING PLAINTIFF SUMMARY JUDGMENT ON ITS COMPLAINT."
 {¶ 11} In their first assignment of error, the Kohlers have asserted that the trial court erred in granting Kidron's motion for summary judgment. Specifically, the Kohlers have argued that there remains a genuine issue of material fact regarding the amount of the judgment to which Kidron is entitled. We agree. *Page 5 
 {¶ 12} "[A]n action on an account is founded upon contract," and as such, Kidron "must prove the necessary elements of a contract action[.]"Asset Acceptance Corp., v. Proctor, 156 Ohio App.3d 60, 2004-Ohio-623, at ¶ 12. Additionally, Kidron "must prove that the contract involves a transaction that usually forms the subject of a book account." Id. To properly plead an action on account, Kidron must attach a copy of the account to the complaint in accordance with Civ.R. 10(D). SeeCreditrust Corp. v. Richard (July 7, 2000), 2d Dist. No. 99-CA-94, at *3. Furthermore, the attached
 "account must show the name of the party charged. It begins with a balance, preferably at zero, or with a sum recited that can qualify as an account stated, but at least the balance should be a provable sum. Following the balance, the item or items dated and identifiable by number or otherwise, representing charges or debits, and credits, should appear. Summarization is necessary showing a running or developing balance or an arrangement which permits the calculations of the balance claimed to be due." Asset Acceptance Corp. at ¶ 12, quoting Brown v. Columbus Stamping Mfg. Co. (1967), 9 Ohio App.2d 123, 126 (discussing R.C. 2309.32, which has been replaced by Civ.R. 10(D)).
 {¶ 13} In support of its motion for summary judgment, Kidron provided an account and an affidavit explaining their system of accounting. There is no dispute that the account provided by Kidron satisfied the criteria set forth in Asset Acceptance Corp. The Kohlers have argued, however, that summary judgment was improper because a genuine issue of material fact exists regarding the balance due on the account. We disagree. *Page 6 
 {¶ 14} In response to Kidron's motion for summary judgment, the Kohlers provided no evidence that the balance due was incorrect. First, the Kohlers asserted that they did not believe that they had agreed to the interest rate used by Kidron. This belief, however, was undermined by the parties' contract which expressly provided for the interest rate utilized by Kidron. Additionally, the Kohlers asserted that the account submitted by Kidron did not contain all of the payments made by the Kohlers. Specifically, Jana Kohler averred that the statement of account was "inaccurate, incomplete, and not understandable."
 {¶ 15} Upon review, however, the Kohlers provided no evidence of any errors in the statement of account provided by Kidron. Instead, the Kohlers asserted that the statement of account's running balance differed substantially from the running balance contained on their monthly statements. Kidron, however, offered evidence that the two documents, the statement of account and the monthly statement, were designed to convey different information. That is, the numbers were different because they represented different figures. The statement of account kept an overall running balance of the Kohlers' account. The monthly statements contained a balance due for invoices on that particular month's statement. As such, the different numbers utilized by the two documents does not undermine the accuracy of the statement of account.
 {¶ 16} In addition, Jana Kohler stated that the Kohlers did not have invoices for some of the amounts claimed by Kidron. Ms. Kohler, however, did not dispute *Page 7 
that these charges were incurred. Rather, she asserted that the Kohlers could not verify the amounts. In response, Kidron asserted that it had provided invoices to the Kohlers during discovery for every one of the charges listed on the statement of account. The Kohlers provided no evidence to refute this assertion. Accordingly, the Kohlers presented no evidence, other than Jana Kohler's unsupported conclusory statements, to dispute the accuracy of Kidron's statement of account.
Recoupment
 {¶ 17} The Kohlers have continued, however, arguing that summary judgment was improper because there remains a genuine issue of material fact surrounding their counterclaim for recoupment. We agree.
 {¶ 18} Recoupment is an affirmative defense, arising out of the same transaction as a plaintiffs claim, which entitles the defendant to reduce the amount demanded, but only to the extent sufficient to satisfy the plaintiffs claim. Riley v. Montgomery (1984), 11 Ohio St.3d 75, 77. Under a recoupment defense, the defendant alleges that "the plaintiffs claim is based on a particular contract or transaction and that to entitle the plaintiff to the sum claimed, he must prove compliance with certain obligations of the contract; that he failed to do so; and therefore that the defendant has been so damaged in the transaction that the plaintiff is not entitled to recover." Cauffiel Machinery Co. v.Eastern Steel *Page 8 Metal Co. (1978) 59 Ohio App.2d 1, 6, quoting 20 Am. Jur.2d 235, Counterclaim, Recoupment, and Setoff, Section 11.
 {¶ 19} In the instant matter, the Kohlers sought recoupment under a theory that Kidron or its predecessor had sold them contaminated feed which killed off a large portion of their livestock. To support this claim, the Kohlers relied upon the expert's report of Dr. William Olsen. On appeal, Kidron has asserted that Dr. Olsen's testimony was incompetent because it was not based upon sufficiently reliable information and scientific techniques to establish causation. Kidron, however, did not move to strike Dr. Olsen's report from the trial court's proceedings, so it was properly before the trial court to consider. Moreover, we cannot agree with Kidron's assertion that an expert is required in this case to create a genuine issue of material fact for trial. "Unless a matter is within the comprehension of a layperson, expert testimony is necessary." Ramage v. Central OhioEmergency Serv., Inc. (1992), 64 Ohio St.3d 97, 102, citing Evid.R. 702 and 703. Herein, we cannot say that it is beyond the comprehension of layperson to find that feeding cattle contaminated feed can cause them to become ill.
 {¶ 20} In addition to Dr. Olsen's report, the Kohlers presented evidence that their cattle became ill when they were fed from the feed purchased from the Kidron entities. The Kohlers asserted that those same cows became better when they stopped feeding them from the feed bought from the Kidron entities. Dr. Olsen opined that this was an unexpected result and that a cow's health would not *Page 9 
typically improve by changing feed in this manner. The Kohlers also presented evidence of the following: a significant number of cattle became ill after eating the feed; dead birds were seen on the farm around the time the feed was used; rodents did not approach the feed during that timeframe; a horse and pony also died after eating the feed; and no other changes occurred on the farm or in the procedures used by the Kohlers. Given this substantial amount of circumstantial evidence, we cannot find that the Kohlers were required to present expert testimony simply to survive summary judgment. That is, we make no determination about the burden that the Kohlers may face at trial. Rather, we only determine that the Kohlers' have demonstrated a genuine issue of material fact at this stage in the proceedings. SeeThompson v. Gynecologic Oncology Pelvic Surgery Assoc, 10th Dist. No. 06AP-340, 2006-Ohio-6377. In Thompson, the court noted as follows:
 "The summary judgment standard addresses the limited, preliminary question of whether the plaintiff has produced sufficient evidence to demonstrate that a genuine issue of fact exists for the jury to decide, rather than the broader, decisive question of whether the plaintiffs evidence proves his case." (Internal citations omitted.) Id. at ¶ 30, quoting Phelps v. Jones Plastic Engineering Corp. (C.A.6, 2001), 20 Fed.Appx. 352, 356.
 {¶ 21} It is undisputed that the Kidron entities were bound under contract to sell feed which was fit for consumption by the Kohlers' cattle. Based upon the above evidence, the Kohlers' created a genuine issue of material fact regarding *Page 10 
whether Kidron had breached that promise and thereby created a genuine issue of material fact surrounding their defense of recoupment.[1]
 {¶ 22} Kidron, however, has asserted that it is still entitled to judgment on its statement of account and that the matter of recoupment may be disposed of at a later date. However, the trial court has already entered final judgment on Kidron's claim which disposed of the Kohlers' claim of recoupment. As noted above, this was error. Any judgment rendered on Kidron's claim, therefore, was in error. See MarionProduction Credit Assn. v. Cochran (1988) 40 Ohio St.3d 265. InCochran, the Court noted as follows:
 "It is reasonably well-settled in Ohio that a court which has before it both a claim and a counterclaim cannot enter a final judgment in favor of either party until both claims have been determined. At that time, the amount of damages due to the party having the greater injury shall be reduced by the amount of damages suffered by the party having the lesser injury. In a foreclosure proceeding, such final judgment will determine the rights of all the parties in the premises sought to be foreclosed upon. And where the mortgagor's damages ultimately exceed those of the mortgagee, the mortgagee's right to recover the premises is defeated." (Internal citations omitted.) Id. at 270.
Given that the Kohlers' claim of recoupment could eliminate the entirety of Kidron's claim, Kidron cannot assert that it is entitled to judgment as a matter of law on its claim. Accordingly, the Kohlers' first assignment of error has merit. *Page 11 
 Assignment of Error Number Two "THE TRIAL COURT ERRED BY GRANTING THE COUNTERCLAIM DEFENDANTS SUMMARY JUDGMENT ON THE COUNTERCLAIM."
 {¶ 23} In their second assignment of error, the Kohlers have argued that the trial court erred in granting summary judgment against them on their counterclaims. Specifically, the Kohlers have argued that genuine issues of material fact exist surrounding each of their counterclaims. We agree in part.
Breach of Warranty Counterclaims
 {¶ 24} Initially, we note that Kidron has asserted that the counterclaims raised by the Kohlers which assert claims for breach of warranty are barred by the statute of limitations. However, as explained in response to the Kohlers' third assignment of error, we find that the trial court erred in permitting the Kidron entities to raise such a defense. Accordingly, the statute of limitations cannot form the basis for supporting summary judgment.
 {¶ 25} In addition, Kidron has argued that summary judgment was appropriate on these claims for the same reason that summary judgment was appropriate on the Kohlers' claim for recoupment. Having found that argument to lack merit above, we again find no merit to such an argument.
 {¶ 26} As noted above, the Kohlers presented evidence that Kidron and/or its predecessor Sommer sold feed which was unfit for consumption. Accordingly, *Page 12 
the Kohlers presented sufficient evidence to create a genuine issue of material fact on their counterclaims for breach of warranty.
Fraud
 {¶ 27} In granting summary judgment on the Kohlers' claim for fraud, the trial court found that the Kohlers had failed to plead fraud with particularity as required by Civ.R. 9(B). The circumstances constituting fraud are to be stated with particularity and generally include the time, place and content of the false representation, the fact misrepresented, and the nature of what was obtained or given as a consequence. F J Roofing Co. v. McGinley Sons, Inc. (1987),35 Ohio App.3d 16, 17; Civ.R. 9(B). To have met the requirements of Civ.R. 9(B), the complaint or counterclaim must have "sufficiently apprised" the defendant "of the specific claims to be required to answer." Haddon ViewInvestment Co. v. Coopers Lybrand (1982), 70 Ohio St.2d 154, 159.
 {¶ 28} Assuming arguendo that the Kohlers pled fraud with particularity, their claims still must fail as a matter of law. The Ohio Supreme Court has identified the elements of fraud as: (1) a representation, or where there is a duty to disclose, concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately *Page 13 
caused by the reliance. Cohen v. Lamko, Inc. (1984), 10 Ohio St.3d 167,169. Upon review, the Kohlers presented no evidence to support the third element of fraud.
 {¶ 29} Throughout the litigation below, Kidron and Sommer employees testified about the safety measures taken by their respective employers to ensure against contaminated feed. Specifically, employees testified via deposition that the feed was examined prior to it being purchased by Sommer or Kidron, that employees routinely examined the feed while it was in storage, and that the bins used for storage were always properly aerated to prevent the feed from becoming contaminated. The employees testified that they would not sell grain if it was contaminated. Further, the employees denied ever separating feed which was a poorer quality and selling that feed to the Kohlers.
 {¶ 30} In an attempt to counter this evidence, the Kohlers present evidence that employees knew that the feed sold to the Kohlers had a musty smell. This evidence does not create a genuine issue of material fact regarding whether the Kidron entities knew that the grain was contaminated. Rather, the evidence indicates that the Kidron entities were aware that the shipment of feed at issue came from near the end of the yearly supply of feed. Accordingly, it had been in storage for a significant amount of time. None of the Kidron employees testified that the feed was moldy. Furthermore, the Kidron employees testified that the Kohlers were the only individuals who complained about the quality of the feed. *Page 14 
Specifically, the Kidron employees testified that they sold tons of feed to numerous farms and received no complaints similar to those raised by the Kohlers.[2] Accordingly, the Kohlers presented no evidence that the Kidron entities knew that their representations about the feed being fit for consumption were false. Furthermore, given that the Kohlers' complaint was isolated and that the Kidron entities had significant safeguards in place to protect their feed while it was in storage, we cannot say that the Kidron employees were reckless in representing that the feed was fit for consumption. As such, the Kohlers failed to present evidence on one of the elements of its claim. The trial court, therefore, did not err in granting summary judgment in favor of Kidron and Sommer on the Kohlers' fraud claim.
Bad Faith
 {¶ 31} R.C. 1301.09 states as follows: "Every contract or duty within [the following chapters] imposes an obligation of good faith in its performance or enforcement." The Kohlers have asserted that the trial court erred in granting summary judgment on their claim asserting a breach of this provision because genuine issues of material fact remain. We disagree. *Page 15 
 {¶ 32} In their brief, the Kohlers have asserted that the Kidron entities acted in bad faith by misstating the alleged amount due on the account and by fraudulently selling contaminated feed. As noted above, neither of these contentions has merit. The Kohlers presented no evidence that the Kidron entities knew that the feed was contaminated and the Kohlers presented no evidence that the Kidron entities misstated the amount due on the account. Accordingly, the trial court did not err in granting summary judgment in favor of Kidron and Sommer on the Kohlers' bad faith claim.
Summary
 {¶ 33} The trial court erred in granting summary judgment on the Kohlers' breach of warranty claims. However, the trial court properly granted summary judgment on the Kohlers' claims for fraud and bad faith. Accordingly, the Kohlers' second assignment has merit as detailed herein.
 Assignment of Error Number Three "IT WAS ERROR TO ALLOW THE COUNTERCLAIM DEFENDANTS TO RAISE THE STATUTE OF LIMITATIONS DEFENSE AS AN AFFIRMATIVE DEFENSE TO THE COUNTERCLAIM."
 {¶ 34} In their third assignment of error, the Kohlers have argued that the trial court abused its discretion by granting the motions of Kidron and Sommer for leave to amend their answers. Specifically, the Kohlers have argued that the lengthy delay in asserting the affirmative defense of the statute of limitations precludes the defense from being raised. We agree. *Page 16 
 {¶ 35} Initially, this Court notes our standard of review.
 "[T]he decision whether to grant a motion for leave to amend a pleading under Civ.R. 15(A) is within the discretion of the trial court. However, the language of Civ.R. 15(A) favors a liberal amendment policy and a motion for leave to amend should be granted absent a finding of bad faith, undue delay or undue prejudice to the opposing party." Hoover v. Sumlin (1984), 12 Ohio St.3d 1, 6.
As this decision on the grant or denial of amended pleading is within the discretion of the trial court, we will not overturn such a decision but upon a finding of abuse of discretion. See id. An abuse of discretion is more than an error of law or judgment; it is a finding that the court's attitude is unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. Under this standard, an appellate court may not merely substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621.
 {¶ 36} The mere failure to include an affirmative defense does not constitute an absolute waiver of that defense in all circumstances. As the Court explained in Hoover:
 "In the real world, however, failure to plead an affirmative defense will rarely result in waiver. Affirmative defenses — like complaints-are protected by the direction of Rule 15(a) that courts are to grant leave to amend pleadings freely when justice so requires. Accordingly, failure to advance a defense initially should prevent its later assertion only if that will seriously prejudice the opposing party." (Internal quotations and alterations omitted.) Hoover, 12 Ohio St.3d at 5.
Prejudice has been found where a defendant seeks to assert defenses at a time when the plaintiff could not adequately prepare to litigate them. See St. Mary's v. *Page 17 Dayton Power Light Co. (1992), 79 Ohio App.3d 526 (defendant sought leave to amend its answer to add eleven newly asserted affirmative defenses minutes before a scheduled hearing on the case was to be held).
 {¶ 37} We note that the Kohlers are correct in their assertion that neither counterclaim defendant pled the statute of limitations defense. Sommer's claim that its statement "Defendants' actions are barred under the product liability laws of the State of Ohio" encompasses the statute of limitations defense is unsupported by any law. This statement was included among sixteen other affirmative defenses. None of those defenses references, even vaguely, the statute of limitations defense. Furthermore, the statement that the defendant "reserves all the affirmative defenses available" which may come to light during discovery does not legally entitle Sommer or Kidron to raise defenses at any time during the proceedings. Rather, Civ.R. 8 provides that affirmative defenses be expressly stated. See Harris v. Ford Motor Co., 2d Dist. No. 21302, 2006-Ohio-259, at ¶ 24. Sommer and Kidron failed to expressly state the statute of limitations defense. Accordingly, they were required to move to amend their answers and we proceed to determine whether the trial court abused its discretion in granting leave to amend the answers.
 {¶ 38} The Kohlers filed their counterclaim on April 25, 2003. In that counterclaim, the Kohlers asserted that Sommer and/or Kidron sold them contaminated feed in "the Fall of 2000." Throughout their deposition testimony, *Page 18 
the Kohlers asserted that the alleged contaminated feed was sold in the Fall of 2000. As a specific reference, the Kohlers used the Thanksgiving holiday to determine the approximate date when they sampled the feed to have it tested. Each of the Kohlers completed their depositions during the first week of March of 2004. Sommer, however, did not move to amend its answer until May 11, 2005, less than two weeks before the trial date.
 {¶ 39} Accordingly, the Kohlers' counterclaim stated an approximate date upon which their cause of action accrued. The appropriate date for a statute of limitations was more definitively given during depositions in March of 2004. Sommer and Kidron, however, waited over twenty-five months from the date the counterclaim was filed and more than fourteen months from the date they admit they became aware of the defense to move for leave to amend.
 {¶ 40} Sommer and Kidron have relied upon McGlone v. Spade, 3d Dist. No. 3-01-26, 2002-Ohio-2179, for the proposition that a one year delay is acceptable. However, in Spade, the party seeking to amend its answer did so within two months of taking a deposition and learning of the applicability of the defense. Id. at ¶ 50, 53. As such, we findSpade to be inapplicable to Sommer's and Kidron's lengthy delay.
 {¶ 41} In finding an abuse of discretion by the trial court in granting a motion for leave to amend, the Ohio Supreme Court noted as follows:
 "The motion to amend was filed after a trial date was set and two years and ten months after the litigation had commenced. We find *Page 19 
that the trial court abused its discretion in allowing this prejudicial and untimely filing.
 "Appellants were forced to expend time, resources, and money to oppose the first motion for summary judgment, which was appealed all the way up to this court (although we declined jurisdiction in the first appeal). Then, after all experts were in place and discovery was complete, Central was permitted to amend its answer and file a second summary judgment motion to assert and argue an obvious defense, which most likely would have terminated the litigation in the first instance, or at the very least, would have narrowed the issues remaining for resolution." Turner v. Cent. Local School Dist. (1999), 85 Ohio St.3d 95, 99.
We find the reasoning in Turner persuasive. Sommer and Kidron have offered no explanation for their lengthy delay in asserting the statute of limitations. Furthermore, given that this defense presented itself based upon the allegations in the counterclaim itself, we find that the twenty-five month delay was unreasonable.
 {¶ 42} Sommer and Kidron have asserted that the Kohlers suffered no prejudice because they "faced no obstacles by the amendment which they would not have faced had the original pleading raised the defense."Hoover, 12 Ohio St.3d at 6. By failing to initially assert the defense, however, Sommer forced the Kohlers to expend time, resources, and money on a claim that could have been disposed of early on in this litigation. Furthermore, Sommer has given no rationale for its more than fourteen month delay in asserting the defense after it knew of its applicability through the deposition testimony of the Kohlers. Accordingly, we find that the trial court abused its discretion by permitting *Page 20 
Sommer and Kidron to amend their answers to include the statute of limitations defense. The Kohler's third assignment of error has merit.
 Assignment of Error Number Four "IT WAS ERROR TO ALLOW SOMMER AND SONS TO WITHDRAW ITS DEFAULTED ADMISSIONS AFTER THE CLOSE OF DISCOVERY AND ON THE EVE OF TRIAL."
 {¶ 43} In their fourth assignment of error, the Kohlers have argued that the trial court erred in granting Sommer permission to belatedly answer the request for admissions. We agree.
 {¶ 44} Under Civ.R. 36(A), a party may serve a request for admissions upon another party. The purpose of this process is to facilitate early resolution of potentially disputed issues, thereby expediting the trial.Cleveland Trust Co. v. Willis (1985), 20 Ohio St.3d 66, 67, certiorari denied (1986), 478 U.S. 1005, 92 L. Ed. 2d 710. The rule provides that each requested admission is admitted unless, within a designated period of not less than twenty-eight days after service, or within a shorter or longer time as allowed by the court, the party to whom the request is directed serves upon the requesting party a written answer or objection.
 {¶ 45} It is well settled in Ohio that unanswered requests for admissions cause the matter requested to be conclusively established for the purpose of the suit, Id. at 67, and that a motion for summary judgment may be based on such admitted matters. St. Paul Fire MarineIns. Co. v. Battle (1975), 44 Ohio App.2d 261. Failure to answer is not excused because the matters requested to be *Page 21 
admitted are central to the case or must be proven by the requesting party at trial. See Youssef v. Jones (1991), 77 Ohio App.3d 500, 509;Klesch v. Reid (1994), 95 Ohio App.3d 664, 674; T S Lumber Co. v. AltaConstr. Co., Inc. (1984), 19 Ohio App.3d 241, 243-244. "[W]here a party files a written request for admission[,] a failure of the opposing party to timely answer the request constitutes a conclusive admission pursuant to Civ.R. 36 and also satisfies the written answer requirement of Civ.R. 56(C) in the case of a summary judgment." Klesch, 95 Ohio App.3d at 675. "Subject to the provision of Rule 16 governing modification of a pretrial order, the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice the party in maintaining his action or defense on the merits." (Internal quotations omitted.)Brown v. Weidner, 3d Dist. No. 13-06-08, 2006-Ohio-6852, at ¶ 27.
 {¶ 46} A trial court's decision to grant or deny a request for withdrawal of an admission rests within its discretion. National CityBank, NE v. Moore (Mar. 1, 2000), 9th Dist. No. 19465, at *2. In order to find an abuse of discretion, this Court must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore, 5 Ohio St. 3d at 219. Under an abuse of discretion standard, this Court may not merely substitute its judgment for that of the trial court. Pons,66 Ohio St.3d at 621. *Page 22 
 {¶ 47} The Kohlers asserted in the trial court that they served requests for admissions on both Kidron and Sommer on September 12, 2003. Kidron filed responses to the admissions on December 10, 2003. Sommer did not file responses to the request for admissions. On February 23, 2005, Sommer was informed that the Kohlers intended to use the admissions in support of their case. More than two months later, Sommer sought to amend Kidron's response to the request for admissions to include Sommer as an additional party, thereby permitting Sommer to belatedly answer the requests.
 {¶ 48} "[T]here is a presumption of proper service in cases where the Civil Rules on service are followed. However, this presumption is rebuttable by sufficient evidence." Rafalski v. Oates (1984),17 Ohio App.3d 65, 66, citing Grant v. Ivy (1980), 69 Ohio App.2d 40. In its motion, Sommer attempted to rebut this presumption, asserting that it never received the request for admissions. However, in over two years of contentious litigation, this is the only document Sommer purports to have never received. There is nothing in the record beyond this bare assertion to support Sommer's argument that it never received service. See Jackson-Summers v. Brooks, 8th Dist. No. 86522, 2006-Ohio-1357, at ¶ 22. Moreover, even the trial court apparently did not believe these statements and referred to the failure to respond as an "oversight."
 {¶ 49} Furthermore, Sommer's assertion that it never received service is undermined by its own actions. In an attempt to remedy its failure to answer the *Page 23 
request, Sommer sought to amend the cover page to the responses filed on behalf of Kidron. If in fact Sommer had never received the request for admissions, its actions lack logic. That is, if Sommer had never received the request, it would be illogical for Sommer to seek to respond to those nonexistent requests.
 {¶ 50} Sommer also has asserted that the Kohlers suffered no prejudice from the trial court's grant of its motion to withdraw the admissions. Specifically, Sommer has asserted that Kidron's responses placed the Kohlers on notice that both entities disputed the Kohlers' claims. Intuitively, this may very well be true. However, Kidron and Sommer were both named as defendants in the Kohlers' counterclaim. They are not one entity and the owner of Sommer explicitly stated that Kidron does not speak for his company. As such, both defendants had an obligation to respond to the admissions.
 {¶ 51} Particularly troubling is the delay that occurred before Sommer belatedly answered the requests for admissions after learning that the Kohlers intended to rely upon those admissions. In correspondence with Sommer dated February 23, 2005, the Kohlers informed Sommer that it would be using the admissions. Sommer then waited more than two months before seeking to withdraw its admissions. Then, less than one week prior to trial and more than 500 days after its responses were due, Sommer sought to withdraw its admissions. During that two-month time period, the expert hired by the Kohlers relied upon those admissions to form his expert opinion. *Page 24 
 {¶ 52} Sommer's assertion that the Kohlers were not prejudiced ignores that the Kohlers' paid expert relied upon the admissions in part to reach his conclusions. Further, Sommer's assertion is disingenuous in that Sommer argued that summary judgment was proper because absent theadmissions, the Kohlers were unable to create a genuine issue of material fact. As such, Sommer recognized that the Kohlers relied heavily upon the admissions and would undoubtedly be prejudiced by their withdrawal.
 {¶ 53} Sommer also raises an argument expressly refuted by this Court's precedent. Sommer asserts that the admissions went to the heart of the Kohlers' claims and thus permitted the Kohlers to utilize a procedural device to elude proving the merits of their case. Sommer "fails to realize that the civil rules, even those [it] finds distasteful, are in fact the law." GMAC Mtge. Corp. v. Titch. 9th Dist. No. 04CA0012-M, 2005-Ohio-868, at ¶ 24. Thus, "[w]hile Civ.R. 36(B) emphasizes the importance of resolving a case on the merits, it also assures each party that justified reliance on an admission in preparation for trial will not operate to his prejudice." (Internal quotations omitted.) Ramirez v. D M Drywall, Inc., 6th Dist. No. H-05-016, 2006-Ohio-725, at ¶ 10. As the Kohlers followed the applicable civil rules, they were justified in relying upon Sommer's admission and should not be prejudiced by that reliance. Accordingly, the trial court abused its discretion in permitting Sommer to belatedly answer the request for admissions. The Kohlers' fourth assignment of error has merit. *Page 25 
 Assignment of Error Number Five "IT WAS ERROR TO DENY THE KOHLERS LEAVE TO AMEND THEIR COUNTERCLAIM TO STATE THEIR ALLEGATIONS OF FRAUD WITH PARTICULARITY."
 {¶ 54} In their final assignment of error, the Kohlers have asserted that the trial court erred in denying them leave to amend their counterclaim to plead fraud with particularity. We disagree.
 {¶ 55} As noted above, the decision on the grant or denial of amended pleading is within the discretion of the trial court, and we will not overturn such a decision but upon a finding of abuse of discretion.Hoover, 12 Ohio St.3d at 6. An abuse of discretion is more than an error of law or judgment; it is a finding that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore, 5 Ohio St.3d at 219. Under this standard, an appellate court may not merely substitute its judgment for that of the trial court. Pons, 66 Ohio St.3d at 621.
 {¶ 56} A motion for leave to amend is properly denied when the amendment would be futile. Natl. City Bank v. Citizens Natl. Bank ofSouthwest Ohio, 2d Dist. No. 20323, 2004-Ohio-6060, at ¶ 26. As noted supra, permitting the Kohlers to amend their counterclaim to state fraud with particularity would have been an exercise in futility as the Kohlers failed to present evidence on one of the elements of their fraud claim. Accordingly, the trial court did not abuse its discretion in denying the Kohlers leave to amend their counterclaim for fraud. The Kohlers' fifth assignment of error lacks merit. *Page 26 
 III {¶ 57} The Kohlers' first, third and fourth assignments of error are sustained. The Kohlers' second assignment of error is overruled in part and sustained in part. The Kohlers' fifth assignment of error is overruled. The judgment of the Wayne County Court of Common Pleas is affirmed in part and reversed in part and the cause is remanded to the trial court for further proceedings consistent with this opinion.
Judgment affirmed in part, reversed in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this *Page 27 
judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to the parties equally.
CARR, J. MOORE, J. CONCUR
[1] We note that this Court has not discussed Sommer's purported admissions in determining whether a genuine issue of material fact exists. Accordingly, any error or lack thereof in permitting Sommer to belatedly answer those admissions has no impact on our conclusion.
[2] While these facts support Kidron's assertions that it did not knowingly sell contaminated feed, they do not obviate the genuine issue of material fact on the Kohlers' remaining claims because as noted above, the Kohlers presented conflicting evidence on those claims. *Page 1