DECISION. *Page 2 
{¶ 1} Defendants-appellants Amy K. and Demetrious Y. Smith borrowed $85,400 to buy a house, signed a promissory note, and secured the note with a mortgage on the house. The Smiths soon defaulted. Chase Manhattan Mortgage Corporation (Chase), the servicer of the loan, and Mortgage Electronic Registration Systems, Inc. (MERS), the holder of the note and the mortgage, brought a foreclosure action against the Smiths.
 {¶ 2} The trial court entered summary judgment for Chase and MERS. The Smiths have appealed. We affirm.
 I. Hefty Loans Lead to Bankruptcy and Legal Action {¶ 3} In January 2003, the Smiths purchased a house on Ehrling Road in Cincinnati. They planned to use the house as rental property. Demetrious signed a promissory note for $85,400 with Aegis Funding Corporation and secured the note by giving a mortgage on the Ehrling property to MERS. The mortgage was recorded. A clause on the first page of the note stated that the lender was entitled to transfer the note. Sometime after the closing, Aegis transferred the note to MERS, and Chase became the servicer of the loan. (A loan servicer provides administrative services after the closing, such as maintaining payment records and sending statements.)
 {¶ 4} The Smiths filed for bankruptcy in 2004. In their Chapter 13 bankruptcy plan, the Smiths had agreed to surrender the Ehrling property to Chase. The bankruptcy court granted Chase relief from the Smiths' automatic stay, which allowed Chase and MERS to bring a foreclosure action on the Ehrling property.
 {¶ 5} The Smiths' pro se answer asserted that they were victims of predatory lending. The Smiths specified that Demetrious had been sold four houses in one year, *Page 3 
that the houses had been sold at inflated prices, that the inflated prices had left no equity for repairs, that the cost of the repairs had forced them into bankruptcy, and that because of the "deception perpetrated on" them, legal action would be forthcoming. The Smiths did not assert any counterclaims.
 {¶ 6} Chase and MERS moved for summary judgment in December 2004. The motion was accompanied by an affidavit from Robin Thompson, who stated that she was a foreclosure specialist for Chase, that she was personally familiar with the Smiths' account, and that the Smiths were in default on the note.
 {¶ 7} The Smiths responded to the summary-judgment motion with a verified complaint from a separate lawsuit. The verified complaint had been sworn in the presence of a notary. The complaint stated that the Smiths had purchased four houses; that Jeffery Henry had assisted the Smiths in purchasing the homes; that Henry had identified himself as a mortgage broker; and that Henry had failed to disclose to the Smiths both that he had been denied a license to be a loan officer because of his criminal record and that Henry and his wife, Angela Henry, had ownership interests in the properties that he had presented to the Smiths for purchase.
 {¶ 8} The complaint further alleged that Henry had been an agent of Chase and MERS, that an appraiser had inflated the value of the homes, and that Chase and MERS, along with other entities, had engaged in "flipping" — selling real estate to vulnerable, unsophisticated persons at prices well above the fair market value, knowing that the buyers would be unable to make the loan payments.
 {¶ 9} The complaint stated that the Ehrling property had been appraised and sold at an inflated price. It stated that Angela Henry had purchased the Ehrling property in April 2002 for $48,000, and that an appraiser had later valued the house at *Page 4 
$103,000. The Smiths bought the property in January 2003 for $85,400 — less than ten months after Angela had paid only $48,000 for the same property.
 {¶ 10} The Smiths filed a motion to strike Thompson's affidavit in support of summary judgment. A magistrate denied the motion. The Smiths hired an expert to research the Ehrling property records. The expert could not find anything that indicated that Chase had an interest in the property — the mortgage holder was MERS. The Smiths then moved to set aside the magistrate's decision. The trial court affirmed the magistrate's decision.
 {¶ 11} In January 2006, the magistrate granted summary judgment to Chase and MERS.
 {¶ 12} The Smiths filed a notice of removal to federal court in February 2006. The federal court remanded the case to state court in August 2006 — Chase and MERS were awarded attorney fees.
 {¶ 13} In December 2006, two years after Chase and MERS had first filed for summary judgment, the trial court affirmed the magistrate's summary-judgment ruling and entered judgment for Chase and MERS. The Smiths have appealed.
 II. Assignments of Error {¶ 14} The Smiths assert three assignments of error, alleging that the trial court erred by (1) refusing to strike Thompson's affidavit; (2) granting summary judgment to Chase and MERS; (3) entering a final order during the pendency of an appeal with the Bankruptcy Appeals Panel concerning the Ehrling property.
 III. Thompson's Affidavit {¶ 15} Although the brief is not very clear as to which ruling the first assignment of error refers, we assume that the first assignment of error concerns Thompson's affidavit and that the second deals with the entry of summary judgment. *Page 5 
 {¶ 16} With respect to the first assignment, it appears that the Smiths are arguing that Thompson's affidavit was improper because Chase was not a real party in interest, that the affidavit contained hearsay, and that the affidavit did not comport with the best evidence rule.
 {¶ 17} To back up the assertion that Chase was not a real party in interest, the Smiths' attorney hired an expert to research whether Chase had been assigned the mortgage. But from the beginning of its involvement in the loan, Chase was the loan servicer — Chase never claimed to hold the mortgage.
 {¶ 18} MERS was the mortgage holder — this has remained constant throughout. MERS also owned the note on the loan. As the mortgagee and the holder of the note, MERS was the real party in interest. Civ.R. 17 only requires that "[e]very action shall be prosecuted in the name of the real party in interest."[1] This requirement was met; thus, the real-party-in-interest argument has no merit.
 {¶ 19} Even if the real-party-in-interest argument had some merit, it would not aid the Smiths on this issue. An affiant need not be a party to an action. Thompson had knowledge about the principal amount of the loan, the interest due, the payments, and the default. An affidavit must be based on personal knowledge, but the rule says nothing about the affiant being a party to the action.[2]
 {¶ 20} The Smiths also argue that the hearsay[3] and best evidence[4] rules barred Thompson's affidavit. Not so.
 {¶ 21} As a foreclosure specialist at the company that serviced the loan, Thompson was familiar with the Smiths' account. The affidavit did not offer an out-of-court statement — Thompson spoke from her personal knowledge. Thus, the affidavit did *Page 6 
not contain hearsay. Further, because Thompson did not testify to the contents of any written documents, the "best evidence rule" was not implicated. The trial court did not err in considering the affidavit.
 {¶ 22} The Smiths' first assignment of error is overruled.
 IV. Summary Judgment {¶ 23} The magistrate granted summary judgment to Chase and MERS; the trial court affirmed the magistrate's ruling.
 {¶ 24} The Smiths argue that the court erred because it granted summary judgment to Chase when it was not a real party in interest, because it ruled that the Smiths had failed to plead their affirmative defense — fraud — with particularity, and because it rejected the verified complaint as an affidavit to oppose summary judgment.
 {¶ 25} The trial court properly granted summary judgment if Chase and MERS demonstrated that (1) there was no genuine issue as to any material fact; (2) Chase and MERS were entitled to judgment as a matter of law; and (3) reasonable minds could only reach a conclusion that was adverse to the Smiths.[5]We review a trial court's grant of summary judgment de novo.[6]
 {¶ 26} The Smiths argue that because Chase was not the holder of the mortgage or the note, it was not a real party in interest and thus was unable to bring the foreclosure action against the Smiths. We have already addressed the real-party-in-interest argument — MERS was the real party in interest and was present in this case. Even if the Smiths had offered a valid argument, the real-party-in-interest defense had been waived. It was not until at least a year after the original complaint had been filed that the Smiths raised a question about the real party in interest. *Page 7 
 {¶ 27} The Smiths also contend that the court erred by granting summary judgment because they asserted an affirmative defense, fraud. Chase and MERS counter that the Smiths' defense of predatory lending was predicated upon a catchphrase rather than a true defense, and that fraud was not pleaded with particularity.
 {¶ 28} The Smiths were required to plead any affirmative defenses in their answer to Chase and MERS's complaint.[7] And because the Smiths alleged fraud, their answer had to state with particularity the circumstances that constituted the fraud.[8] Such circumstances generally include the time, place, and content of a false representation, what the representation entailed, and what the wrongdoers received as a result of the misrepresentation.[9]
 {¶ 29} If the allegations in the verified complaint are true, the Smiths may have been defrauded. But fraud could not have been a defense in this foreclosure case. The Smiths did not adequately allege fraud against Chase and MERS in their answer. The Smiths' answer stated that they were victims of predatory lending, that they were sold four houses in a year, and that the houses were overpriced. The answer did not indicate when the allegedly fraudulent transactions had occurred. It did not specifically allege that Chase or MERS had received any benefits from the fraud. It did not say what false representation had been made to them, or by whom.[10]
 {¶ 30} The Smiths' answer was filed pro se. While some leniency toward pro se litigants might be appropriate at times, in general pro se litigants must follow the same rules as represented litigants.[11] The Smiths effectively asserted no defenses and did not *Page 8 
deny that they had defaulted on their loan. Chase and MERS were entitled to summary judgment. There was no issue of material fact for a jury to decide.
 {¶ 31} Even if the Smiths had alleged fraud with specificity, the verified complaint was not sufficient to avoid summary judgment. The verified complaint was a sworn statement. An affidavit is a "declaration of facts written down and sworn to by the declarant before an officer authorized to administer oaths, such as a notary public."[12] The verified complaint was sufficient to serve as an affidavit. But an affidavit to oppose summary judgment must be made on personal knowledge.[13]
 {¶ 32} The verified complaint alleged some facts that were based on the Smiths' personal knowledge. But as to Chase and MERS, the verified complaint was lacking. Chase and MERS were mentioned only in conclusory statements that were not based on personal knowledge. For example, the complaint alleged that Henry was an agent of Chase and MERS, and that Chase and MERS had known that the loan would force the Smiths to seek bankruptcy. But it offered nothing to show that the Smiths personally knew this to be true. An allegation does not equate with personal knowledge.
 {¶ 33} We overrule the Smiths' second assignment of error.
 V. Stay of Final Order {¶ 34} The Smiths argue that a final order from the trial court should not have been issued because their appeal to the Bankruptcy Appeals Panel (BAP) on reimposing the automatic bankruptcy stay was still pending.
 {¶ 35} When a party files for bankruptcy, an automatic stay is imposed, prohibiting most creditors from pursuing any action to collect from the debtor.[14] The bankruptcy court has the power to lift the stay. In this case, the bankruptcy court lifted *Page 9 
the Smiths' automatic stay in accordance with their Chapter 13 repayment plan, which allowed Chase and MERS to file their foreclosure action.
 {¶ 36} The bankruptcy court lifted the stay as to Chase and MERS in October 2004. The Smiths did not object until almost two years later, in August 2006, when the Smiths moved to reimpose the automatic stay. The bankruptcy court denied the Smiths' motion; the Smiths appealed to the BAP. In July of this year, the BAP affirmed the denial. The Smiths then appealed to the United States Sixth Circuit Court of Appeals, where the bankruptcy case is currently pending.
 {¶ 37} The Smiths waited two years to object to the bankruptcy court lifting the automatic stay. Both the bankruptcy court and the BAP refused to reinstate the stay. We refuse to provide a means for the Smiths to continue to avoid the bankruptcy court's order. The Smiths' third assignment of error is overruled.
 {¶ 38} For the foregoing reasons, we affirm the trial court's judgment.
Judgment affirmed.
SUNDERMANN and DINKELACKER, JJ., concur.
[1] Civ.R. 17(A).
[2] Civ.R. 56(E).
[3] Evid.R. 803(6).
[4] Evid.R. 1002.
[5] State ex rel. Segedy v. Arts Residential Roofing,107 Ohio St.3d 256, 2005-Ohio-6429, 838 N.E.2d 653, at ¶ 14.
[6] Sharonville v. Am. Employers Ins. Co., 109 Ohio St.3d 186,2006-Ohio-2180, 846 N.E.2d 833, at ¶ 5.
[7] Civ.R. 8(C) and 12(B).
[8] Civ.R. 9(B).
[9] L. E. Sommer Kidron, Inc. v. Kohler, 9th Dist. No. 06CA0044,2007-Ohio-885, at ¶ 27.
[10] See, e.g., Coroles v. Sabey (Utah App. 2003), 79 P.3d 974.
[11] Arkwright Mut. Ins. Co. v. Toler, 1st Dist. No. C-020589, 2003-Ohio-2202, at ¶ 15.
[12] Black's Law Dictionary (8 Ed.2004) 62.
[13] Civ.R. 56(E).
[14] Section 362, Title 11, U.S.Code. *Page 1